UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CATHRYN MALLETT | : | DOCKET NO.  06-cv-2001 |
| VS. | : | JUDGE MINALDI |
| MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SECURITY | : | MAGISTRATE JUDGE KAY |

REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After a review of the entire administrative record and the parties' briefs, and pursuant to 42 U.S.C. § 405(g), the undersigned finds that the Commissioner's decision is consistent with relevant legal standards and is supported by substantial evidence in the record and therefore should be AFFIRMED.  *See Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

BACKGROUND

On January 5, 2005, plaintiff Cathryn M. Mallett ("Mallett" or "Plaintiff") filed her Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income, alleging disability since October 27, 2000.  The claims were denied and a request for hearing was timely filed on May 17, 2005.  A hearing was held on July 27, 2006, in Lake Charles, Louisiana before an Administrative Law Judge ("ALJ") where Plaintiff and a vocational expert ("VE") appeared and testified.

At the hearing, Plaintiff's counsel orally amended the application to allege a revised date

of disability of March 4, 2004. (Tr. 231). This amended onset date was offered because Mallett had previously received a closed period of benefits for her back injuries, which were sustained in a workplace accident. (Tr. 192-194). Plaintiff's counsel amended the claim to allege an onset date *after* the previous period of benefits and chose March 4, 2004 because that "is the first date . . . where I could find where the patient complain[s] of radicular pain." (Tr. 231).

On August 14, 2006, the ALJ issued an unfavorable decision. The ALJ determined that, although Mallett's cervical and lumbar pain constituted severe impairments within the meaning of the Social Security Act ("the Act"), she did not have an impairment, nor a combination of impairments that met or equaled an Appendix 1 Listing. (Tr. 15). The ALJ further determined that Mallett retained the capacity to perform a modified level of light work that did not entail running, climbing, lifting heavy objects or working at heights. (Tr. 15-16). Relying on the testimony of a VE (Tr. 220-221), the ALJ determined that Mallett could perform a significant number of jobs in the national economy. (Tr. 17). Therefore, the ALJ found that Mallett was not under a disability, as defined in the Act, for the period extending from March 4, 2004 through August 14, 2006, the date of the decision. (Tr. 18).

Dissatisfied with the decision, Mallett filed a Request For Review with the Appeals Council on September 7, 2006. On September 29, 2006, the Appeals Council denied Plaintiff's Request. On November 1, 2006, Plaintiff filed suit before this court appealing the determinations of the Commissioner

In seeking judicial review pursuant to 42 U.S.C. § 405 (g) Mallett asserts three errors. First, Mallett claims that the ALJ failed to consider all the medical evidence of record. Second, Mallett contends that the ALJ failed to give proper weight to the opinions of Mallett's treating

physicians. Finally, Mallett argues the ALJ erred by failing to perform a detailed analysis of the treating physicians' views as required by law.

## STANDARD OF REVIEW

This court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1993). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* at 401. The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986).

When appearing before the ALJ, Plaintiff had the burden of proof to establish a medically determinable physical or mental impairment that prevented her from engaging in any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. § 1382c(a)(3)(A); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). A finding of no substantial evidence is appropriate only if there are no credible evidentiary choices or medical findings to support the decision. *Johnson v. Bowen,* 864 F.2d 340, 343-344 (5th Cir. 1988). The reviewing court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232 (5th Cir. 1994).

## LAW AND ANALYSIS

**1. Whether the ALJ considered all the medical evidence of record**

Mallett first argues that the ALJ failed to consider all relevant medical evidence. Specifically, she contends that the ALJ ignored or improperly discounted medical records from Dr. Bernauer and Dr. Metoyer, Plaintiff's treating physicians.  Mallett asserts that the ALJ based his decision on the opinions of Dr. Bernard and Dr. Manuel, each a non-treating physician. Mallett contends that the ALJ's failure to consider or discuss the opinions of Dr. Bernauer and Dr. Metoyer was error that prejudiced Plaintiff.

Defendant responds that the ALJ specifically stated that he gave "careful consideration [to] all the evidence." (Tr. 14).  Defendant also notes that because Mallett amended her onset date from October 27, 2000 (Tr. 39) to March 4, 2004, most of the medical records in question relate to a time before the amended onset date and are therefore of limited relevance to Mallett's claim.  Finally, Defendant asserts that the ALJ is not required explicitly to list each and every piece of evidence he considered so long as the decision is based on a review of the entire record.

The ALJ is required to "develop [Plaintiff's] complete medical history for at least the 12 months preceding the month in which [Plaintiff] file[s][her] application unless there is a reason to believe that development of an earlier period is necessary or unless [Plaintiff] say[s] that [her] disability began less than 12 months before [Plaintiff] filed [her] application." 20 C.F.R. § 404.1512(d).  The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity. *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). "[T]he ALJ has sole responsibility for determining a claimant's disability status." *Martinez v. Chater*, 64 F.3d 172, 175-176 (5th Cir. 1995) (quoting *Moore v. Sullivan*, 919 F.2d at  905).

Further, the ultimate issue of disability is reserved to the Commissioner. *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  *Martinez v. Chater,* 64 F.3d at 174.

The undersigned finds no support for Mallett's conclusion that the ALJ failed to consider all the medical evidence.  The ALJ specifically states that he made his decision "[a]fter careful consideration of all the evidence." (Tr. 14).  The ALJ's decision refers to "treating-source" medical evidence.  (Tr. 17).  The ALJ discusses specific diagnostic studies from all relevant time periods, including many tests ordered by and reported on by treating physician Dr. Bernauer. (Tr. 16).  That the ALJ fails to mention either Dr. Bernauer or Dr. Metoyer by name does not in and of itself mean that the ALJ failed to consider their reports and opinions. In the Fifth Circuit, an ALJ is under no duty to enumerate all the evidence in support of, or contrary to his decision. *James J. Flanagan Stevedores, Inc. v. Gallagher,* 219 F.3d 426, 430 (5th Cir.2000) (noting that the 5th Circuit has expressly rejected the 3rd Circuit's requirement of strict disclosure of evidence used to make certain Social Security benefits decisions); *Hammond v. Barnhart*, 124 Fed.Appx. 847, 851 (5th Cir. 2005) (there is "no statutorily or judicially imposed obligation for the ALJ to list explicitly all the evidence he takes into account in making his findings").  That the ALJ weighed certain evidence differently than Plaintiff would prefer does not mean that the ALJ failed to consider it.  The undersigned finds insufficient justification in the record to conclude that the ALJ overlooked or ignored any relevant evidence.

**2. Whether the ALJ accorded proper weight to the opinions of treating physicians**

Mallett next argues that the ALJ failed to give proper weight to the opinions of Drs. Bernauer and Metoyer, Plaintiff's treating physicians.  She contends that the opinions, diagnoses

and medical evidence of a treating physician who is familiar with the claimant's injuries, treatment, and responses should be accorded considerable weight in determining disability. Furthermore, Mallett contends that 20 C.F.R. § 404.1527(d)(2) requires the ALJ to give controlling weight to the treating doctor(s) if the treating doctor's opinion on the nature and severity of the impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.

Defendant responds that the ALJ properly weighed the evidence from the treating physicians.  However, Defendant argues that the ALJ noted multiple sources of evidence that contradicted Mallett's claim of disabling back pain, such as the many unremarkable diagnostic studies, and the consultative examination by Dr. Manuel.

To prove disability resulting from pain, an individual must establish a medically determinable impairment that is capable of producing pain. *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995).  In other words, a claimant's subjective symptoms must be supported by objective medical evidence. *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (citing *Anthony v. Sullivan*, 954 F.2d at 296).  Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity.  *Ripley v. Chater*, 67 F.3d at 556.   Disabling pain must be constant, unremitting, wholly unresponsive to therapeutic treatment, and corroborated in part by objective medical testimony.  *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).

The opinion of the treating physician who is familiar with the claimant's impairments,

treatments, and responses ordinarily should be accorded great weight in determining disability. *Leggett v. Chater,* 67 F.3d 558, 566 (5th Cir.1995). A treating physician's opinion on the nature and severity of a patient's impairment should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Martinez v. Chater,* 64 F.3d at 176 (citing 20 C.F.R. § 404.1527(d)(2)).  However, the ALJ is able to decrease reliance on the testimony of a treating physician for good cause.  *Leggett v. Chater*, 67 F.3d at 566.  "Good cause for abandoning the treating physician rule includes disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence."  *Id.* (internal quotations omitted).

In this case, the ALJ specifically stated that he considered opinion evidence in accordance with the requirements of 20 C.F.R. Section 404.1527 and SSRs 96-2, 96-5p, and 96-6p, and the ALJ's citation to these authorities indicates he was aware of the relevant legal standard. (Tr. 16).  Furthermore, the ALJ's decision demonstrates that he considered the records and opinions of all treating and examining physicians.  For example, the ALJ noted that Mallett suffered a back injury on October 27, 2000 and subsequently underwent a diskectomy and fusion, (Tr. 16) which fusion was performed by Dr. Bernauer.  The ALJ discussed Dr. Bernauer's subsequent diagnostic tests that showed, *inter alia*, that the fusion was solid but mild disc bulging remained.  *Id.*  The ALJ noted that a 2004 EMG ordered by Dr. Bernauer showed minimal electromyographic changes and mild root irritation.

In addition, the ALJ also discussed the opinions of Dr. Bernard, who evaluated Mallett twice in 2001, and reported normal objective findings.  (Tr. 16).  Dr. Bernard also opined "there

are lots of inconsistencies in the examination and I don't think there is any doubt that Ms. Mallett if [sic] malingering." *Id.* The ALJ devoted a paragraph to the findings of Dr. Manuel, who performed a consultative examination on April 9, 2005 and noted that Mallett's neurologic and sensory examinations were normal and that her spinal range of motion was not significantly restricted. (Tr. 16-17). Dr. Manuel observed that Mallett had a slight limp but could walk unaided, and that she could sit and stand for 30 minutes at a time, and could lift 30 pounds. *Id.* In addition, the ALJ cited a DDS medical examination from April 19, 2005 that stated Mallett admitted she could lift or carry 50 pounds, and sit, stand or walk six to eight hours in an eight-hour day. (Tr. 17). The ALJ added that Mallett testified that she has not been taking any pain medication since 2004. *Id*. After weighing all the evidence, the ALJ concluded that, although Mallett's medically determinable impairments could be expected to produce the alleged symptoms, Mallett's statements regarding the intensity, duration and limiting effects of those symptoms were not entirely credible. (Tr. 16).

The undersigned rejects Mallett's argument that the ALJ ignored the views of the treating physicians for the reason that Dr. Bernauer and Dr. Metoyer offer few if any opinions as to the nature and severity of Mallett's impairments. Dr. Bernauer's reports and office examination notes provide diagnostic results, examination findings, and repeat Mallett's subjective sensations of pain, but offer no views on Plaintiff's specific functional limitations. On at least three occasions, however, Dr. Bernauer expresses the opinion that Mallett required surgery to treat a ruptured cervical disc. (Tr. 84, 86, 88). These three letters, addressed to Intracorp Utilization Review, date from October through December of 2002.[1] Notwithstanding his patient's inability to obtain the surgery he recommends, Dr. Bernauer subsequently never offers an opinion as to

---

[1] Mallett never received this surgery because her carrier did not authorize the procedure. (Tr. 183).

Mallett's ability to sit, stand, walk, or lift. [2]  In sum, Dr. Bernauer offers little by way of diagnosis or opinion relevant to Plaintiff's condition after the onset date of March 4, 2004.

Dr. Metoyer, Mallett's other treating physician, saw Plaintiff on a monthly basis from May of 2003 to October of 2004. (Tr. 164-185). In each and every report or clinical note, Dr. Metoyer mentions pain only in the context of what the patient related to him (e.g., "Today she complains of pain rated 6/10 to 8/10 in intensity"). (*See, e.g.*, Tr. 166). So far as the undersigned can determine, Dr. Metoyer himself never offers his perspective on the nature and severity of his patient's limitations. The most that can be inferred from Dr. Metoyer's reports and clinical notes is that Mallett's monthly visits and frequently injection treatments indicate that she was in pain throughout those 17 months. But the Commissioner does not dispute that Mallett was in pain; the issue is whether the nature and severity of that pain rises to the level of disability.

In her brief, Mallett directs the court's attention to the many findings reported by Drs. Bernauer and Metoyer. (Pl. Brief, p. 7). Mallett asserts that the post-operative findings include, for example, "continued pain," "decreased ROM," "cervical and intrascapular pain," and "mild C6 root irritation." *Id*. However, Mallett fails to direct the court's attention to any significant post-operative medical opinions expressed by her treating physicians relevant to the nature and severity of her impairment. Even the fact that Dr. Metoyer opined that Mallett suffered from failed neck syndrome (Tr. 171) lacks context helpful to the issue of impairment. The evidence cited by Mallett in no way controverts the ALJ's determination because none of that evidence

---

[2] As to the wisdom of more surgery, Dr. Metoyer, who does not express an opinion, notes that a letter from Mallett's health care carrier states that "Dr. Gunderson and others did not feel surgery was necessary." (Tr. 177). [Dr. Gunderson's role in Mallett's care is poorly documented. Mallett listed Dr. Clark Gunderson as the person who performed a cervical fusion in October of 2000, (Tr. 58), but his name does not otherwise appear in the record. Hospital records name Dr. Bernauer as the surgeon who performed a cervical fusion on 9/25/01. (Tr. 141). It is not entirely clear from Mallett's testimony whether she had one or two surgeries on her neck. (*See* Tr. 203-205).]

describes how Mallett's pain results in specific functional limitations. The record confirms that none of claimant's treating physicians had indicated that Mallett's impairments were "severe" or "disabling" (or any other quantitative or qualitative description of the degree of impairment). *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th.Cir. 1995) (substantial evidence supported ALJ's finding that claimant could perform a wide range of sedentary work where no physician who examined her pronounced her unable to work). Thus, the ALJ's determination of Mallett's residual functional capacity is not contradicted by any expressed opinion of a treating physician.

      Furthermore, substantial evidence exists to support the ALJ's decision to discredit Mallett's subjective descriptions of the intensity of pain. The ALJ apparently accorded significant weight to Mallett's admission that she has not been taking any pain medication since 2004. He also noted Dr. Bernard's opinion that Mallett was malingering in 2001. The ALJ considered the results of Dr. Manuel's consultative examination, and the DDS medical evaluation in reaching his conclusion that Mallett's statements about the intensity, duration and limiting effects of her pain are not entirely credible. Credibility determinations are generally entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir.2000) (explaining "[i]t is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference."); *Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir.1994) (noting that, although the ALJ must explain his reasons for rejecting a claimant's complaints of pain, he need not "follow formalistic rules in his articulation"). Mallett's argument that the ALJ failed to properly weigh the opinions of her two treating physicians is unavailing in light of the substantial evidence supporting the ALJ's determination.

### 3. Whether the ALJ properly analyzed the opinions of treating physicians

Finally, Mallett contends that the ALJ failed to perform a detailed analysis of the treating physicans' views, as required by law. Mallett cites *Newton v. Apfel*, for the proposition that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." Defendant contends that Mallett misapplies the *Newton* holding to this case because evidence from an examining physician, Dr. Manuel in this instance, contradicts the views of Drs. Bernauer and Metoyer.

The undersigned finds that in this case the ALJ was under no requirement to perform a detailed analysis of the treating physicians' views. The court notes that the very sentence Mallett quotes from *Newton* contains a qualifying exception—"absent reliable medical evidence from a treating or *examining* physician"—which is applicable to the instant case. Dr. Manuel performed a consultative examination on April 9, 2005. (Tr. 152-155). Dr. Bernauer's reports are dated starting in December 2000 and continue at least through September 29, 2003, while Dr. Metoyer's reports are dated starting May 29, 2003 and continue through July 22, 2004. All three of these doctors agree that Mallett suffers cervical and lumbar pain. However, in light of credible evidence from an examining physician, and given the relatively opinion-less evidence from Drs. Bernauer and Metoyer, the ALJ was under no obligation to articulate the six-factor analysis described in 20 C.F.R. § 404.1527(d)(2).

Assuming for the sake of argument that the ALJ was required specifically to analyze and articulate the weight given to the opinions of Mallett's treating physicians, any failure to do so

would amount to harmless error in this case. *See Hammond v. Barnhart*, 124 Fed.Appx. 847 (5th Cir. 2005) (unpublished). Even if the ALJ erred in failing explicitly to weigh the relevant evidence, the recitations by Drs. Bernauer and Metoyer of Mallett's complaints and diagnostic studies do not directly contradict the other evidence of record. Moreover, even if the court were to assume that the views of Drs. Bernauer and Metoyer, if fully credited, would in some way undermine the ALJ's finding of insufficient severity, they would not do so to the degree necessary for this court to overturn the ALJ's determination. The ALJ quotes from Dr. Bernauer's February 23, 2004 review of an MRI which showed "mild disc bulging" with "no significant central canal compromise." (Tr. 16, quoting Tr. 72). The ALJ also cites the EMG Dr. Bernauer ordered on May 24, 2004, which "showed very minimal electromyographic changes and only mild C6 root irritation." (Tr. 16, quoting Tr. 73-75). Mallett concedes that the diagnostic studies "contain relatively benign adjectives such as 'mild' and 'borderline'," (Pl. Brief, p 9), but argues that the ALJ failed to consider the context provided by the treating physicians. For the most part, however, Drs. Bernauer and Metoyer simply repeat these adjectives from the diagnostic studies and offer little in the way of context. Thus, to the extent that Mallett's treating physicians offer views that call into question the validity of the ALJ's decision, those opinions are not sufficiently contradictory to require this court to reverse. In ruling on the nature and extent of Mallett's limitations, the ALJ made a fact-based judgment that contradicts the opinions of Mallett's treating physicians, if at all, to a very limited degree.

## CONCLUSION

Acute back pain often defies objective measurement. The undersigned might have decided the case differently had she been called upon the render a decision for the

Commissioner. However, the court cannot substitute its judgment for that of the ALJ where his decision is based on substantial evidence in accordance with relevant legal standards.

For the foregoing reasons, the undersigned finds that the Commissioner's determination that the plaintiff was not disabled under the Social Security Act is supported by substantial evidence and free of legal error. Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be affirmed and the matter be dismissed.

Under the provisions of 28 U.S.C. § 636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 6th day of June, 2008.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE